**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael R. Leto, | No. CV-20-02180-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

This lawsuit involves a claim under 28 U.S.C. § 1346(1) for recovery of internal-revenue tax erroneously collected.  It is brought by Michael R. Leto ("Plaintiff") against the United States of America ("Defendant").  Now pending before the Court are (1) Defendant's motion for judgment on the pleadings (Doc. 20); and (2) Plaintiff's motion for summary judgment (Doc. 24).  For the following reasons, Defendant's motion is granted, Plaintiff's motion is denied as moot, and Plaintiff is authorized to file a motion for leave to amend his complaint.

## BACKGROUND

I.    Undisputed Facts

The facts below are taken from the pleadings and are uncontroverted unless otherwise noted.  Additional facts related to the parties' arguments are addressed in the Discussion section.

On March 13, 2003, GlobalTranz Enterprises, LLC ("LLC") was formed as an Arizona limited liability company.  (Doc. 1 ¶¶ 7-8.)  Plaintiff "was a member of [LLC]."

1    (*Id.* ¶ 10.)[1]  At all relevant times, LLC was taxed as an S-corporation.  (*Id.* ¶ 9.)

2          On January 3, 2011, GlobalTranz Enterprises, Inc. ("Corporation") was founded in

3    Delaware.  (*Id.* ¶ 12.)  At all relevant times, Corporation was a C-corporation.  (*Id.* ¶ 13.)

4          On January 5, 2011, LLC and Corporation merged, dissolving LLC.  (*Id.* ¶¶ 14-15.)

5    On that date, and "[a]s compensation for his interest in . . . LLC, [Plaintiff] received C

6    corporation stock in [Corporation]."  (*Id.* ¶ 17.)

7          In 2016, Plaintiff sold his stock in Corporation.  (*Id.* ¶ 21.)  When Plaintiff reported

8    this sale on his 2016 federal income tax return, he did not claim a partial exclusion for gain

9    from small business stock under 26 U.S.C. § 1202.  (*Id.* ¶¶ 22-23.)

10          In 2018, Plaintiff filed an amended federal income tax return, claiming a refund of

11    $528,099 for the taxes paid on the gain from the 2016 sale.  (*Id.* ¶¶ 24-26.)  Specifically,

12    Plaintiff's amended return stated that "[a]t the time the original 2016 Form 1040 was filed,

13    the taxpayer was unaware of their eligibility for gain exclusion under . . . [§ 1202].  The

14    amended return is being filed to exclude those gains."  (*Id.* ¶ 26.)

15          By letter dated December 3, 2018, the Internal Revenue Service ("IRS") rejected

16    Plaintiff's claim.  (*Id.* ¶ 27.)  In support of the rejection, the letter stated: "We cannot allow

17    your claim, because the sale of your stock did not come from a qualifying small business.

18    In addition, your assets were greater than fifty million per your Form 1120S, U.S. Income

19    Tax Return for an S Corporation."  (*Id.* ¶ 34.)

20    II.    Procedural Background

21          On November 13, 2020, Plaintiff initiated this action.  (Doc. 1.)

22          On January 19, 2021, Defendant filed an answer.  (Doc. 9.)

23          On February 23, 2021, the Court issued a Rule 16 scheduling order.  (Doc. 14.)  It

24    _____

25    [1]     In its answer, Defendant neither admits nor denies this fact.  (Doc. 9 ¶ 10.)  In its
motion for judgment on the pleadings, Defendant states: "LLC hired Plaintiff as an
26    Executive Vice President for Business Development 'in or about 2005,' and as part of that
hire [LLC] granted Plaintiff a contingent ownership interest in '1,000 membership units,'
27    which vested over time."  (Doc. 20 at 2.)  Plaintiff does not object to this characterization
in later documents.  To the extent there is any distinction between how the parties describe
28    Plaintiff's relationship with LLC, that distinction is not material to the issues discussed in
this order.

1    set a deadline of March 4, 2022 for the competition of fact discovery.  (*Id.*)

2           On April 15, 2022, Defendant moved for judgment on the pleadings. (Doc. 20.)

3           On April 25, 2022, the parties requested consolidated briefing schedules on

4    dispositive motions and proposed a briefing schedule.  (Doc. 22.)  The parties noted that

5    Plaintiff intended to file a motion for summary judgment and "agree[d] that the legal issues

6    presented in Defendant's Motion and to be presented in Plaintiff's [Motion] are

7    substantially similar and overlapping."  (*Id.* at 2.)

8           On April 26, 2022, the Court granted the parties' request.  (Doc. 23.)

9           On May 6, 2022, Plaintiff filed a consolidated motion for summary judgment and

10   response to Defendant's motion for judgment on the pleadings.  (Doc. 24.)  The motions

11   are now fully briefed. (Docs. 25, 28.)[2]

12                                   **DISCUSSION**

13   I.     <u>Partial Gain Exclusion For Gain From Qualified Small Business Stock</u>

14          Plaintiff asserts a claim under 28 U.S.C. 1346(1) for recovery of internal-revenue

15   tax erroneously collected.  (Doc. 1.)[3]  "In a refund suit the taxpayer bears the burden of

16   proving the amount he is entitled to recover.  It is not enough for him to demonstrate that

17   the assessment of the tax for which refund is sought was erroneous in some respects."

18   *United States v. Janis*, 428 U.S. 433, 440 (1976).  *See also Watts v. United States*, 703 F.2d

19   346, 348 (9th Cir. 1983) ("We also note that Watts, as a taxpayer in a refund suit, has the

20   burden to prove overpayment of tax.").

21          Here, Plaintiff contends the IRS's rejection of his refund claim was erroneous

22   because the 2016 sale of Corporation stock qualified for partial gain exclusion under

23   26 U.S.C. § 1202.  (Doc. 1 ¶ 26.)  Plaintiff alleges this error caused him to pay an additional

24   $528,099 in federal taxes for 2016.  (*Id.* ¶ 24.)

25          Under § 1202(a)(1), a noncorporate taxpayer may exclude, from its gross income,

26   _____

27   [2]      Defendant's request for oral argument is denied because the issues are fully briefed
     and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

28   [3]      The parties agree that Plaintiff complied with the requirements under 28 U.S.C.
     § 1346(a)(1) and 26 U.S.C. § 7422(a) to file such a claim.

"50 percent of any gain from the sale or exchange of qualified small business stock held for more than 5 years." "Qualified small business stock" is defined as:

> any stock in a C corporation which is originally issued after [August 10, 1993] . . . , if—(A) as of the date of issuance, such corporation is a qualified small business, and (B) except as provided in subsections (f) and (h), such stock is acquired by the taxpayer at its original issue (directly or through an underwriter)—(i) in exchange for money or other property (not including stock), or (ii) as compensation for services provided to such corporation (other than services performed as an underwriter of such stock).

*Id.* § 1202(c)(1).

In certain circumstances, stock that fails to qualify under § 1202(c)(1) because it was acquired in a stock-for-stock exchange may still qualify for the limited gain exclusion under the so-called "merger exception" in § 1202(h), which allows some nonqualified stock to be treated as qualified.

## II.   Defendant's Motion For Judgment On The Pleadings

### A.   **Legal Standard**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Therefore, a Rule 12(c) motion "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

### B.   **Relevant Factual Allegations**

When deciding a motion for judgment on the pleadings under Rule 12(c), "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). As summarized above, the relevant facts are relatively simple and largely undisputed. In a nutshell, Plaintiff previously held a membership interest in LLC. (Doc.

1 ¶¶ 10, 17.)   In 2011, as part of LLC's merger with Corporation, Plaintiff received Corporation stock in exchange for his membership interest in LLC. (*Id.* ¶¶ 14-17.)  In 2016, Plaintiff sold his Corporation stock. (*Id.* ¶ 21.)  In his 2016 tax return, Plaintiff did not exclude any of the resulting capital gain under 26 U.S.C. § 1202. (*Id.* ¶¶ 22-23.)  Plaintiff then filed an amended return in 2018 requesting a refund of $528,099, believing he was entitled to partial exclusion of that gain under § 1202. (*Id.* ¶¶ 24-26.)  After the IRS rejected Plaintiff's refund claim, he initiated this action. (*Id.* ¶¶ 34-36.)

### C.    **The Parties' Arguments**

Defendant moves for judgment on the pleadings. (Doc. 20.)  Defendant contends that Plaintiff is not entitled to a refund because his Corporation stock was not "qualified small business stock" as required to establish eligibility for § 1202(a)'s partial gain exclusion. (*Id.* at 1-2.)  More specifically, Defendant argues the Corporation stock did not qualify because Plaintiff's membership interest in LLC was stock—and, thus, when Plaintiff acquired his Corporation stock in exchange for his membership interest in LLC, the transaction constituted a "stock-for-stock" exchange under § 1202(c)(1)(B). (*Id.* at 5-7.)  Defendant argues that, regardless of whether a membership interest in an LLC is generally considered "stock" under Arizona law—and, according to Defendant, "Arizona draws no bright line carving ownership in an LLC out of the definition of stock"—LLC agreed to have its membership interests be treated as "stock" for federal taxation purposes when it elected to be treated as an S-corporation and, "[h]aving repeatedly claimed and received the benefits afforded an S Corporation owner, Plaintiff is bound to the form in which he himself cast his business ownership." (*Id.*)  Defendant also argues that LLC's merger with Corporation does not create eligibility under § 1202(h)'s merger exception because § 1202(h) "only covers the exchange of qualified stock for non-qualified stock, in which case the non-qualified stock can potentially be grandfathered into eligibility." (*Id.* at 7-8.)[4]

---

[4]    Defendant also argues that, even if the merger exception were potentially applicable, gain from the 2016 sale of Corporation stock would not be eligible for partial exclusion under § 1202 because the stock was not held in a C-corporation for "substantially all of the taxpayer's holding period." (*Id.* at 8.)  This argument fails under Rule 12(c) because it is

1   Plaintiff opposes Defendant's motion.  (Doc. 24.)  Plaintiff begins by identifying
2   two reasons why he should not be deemed to have acquired the Corporation stock in a
3   "stock-for-stock" exchange.  The first is that his membership interest in LLC was not
4   "stock."  (*Id.* at 5-10.)  Plaintiff argues that Arizona law governs how to characterize this
5   interest and identifies various reasons why, under Arizona law (as well as the law of other
6   states), holding a membership interest in an LLC is not the same thing as owning shares of
7   stock.  (*Id.*)   Additionally, in response to Defendant's arguments concerning the S-
8   corporation election issue, Plaintiff contends: "At no time did Plaintiff own stock in an S-
9   corp.  Plaintiff owned a membership in an LLC electing to be *taxed* as an S-corp.  For legal
10  and tax purposes, there are significant differences between these two ownership interests."
11  (*Id.* at 7-8.)  Second, and alternatively, Plaintiff argues he did not receive the Corporation
12  stock "in exchange for" his membership interest in LLC because the exchange was also
13  supported by other consideration, including "valuable ongoing service" and various
14  restrictive covenants, and/or because he received the Corporation stock "primarily as
15  compensation for services" to Corporation.  (*Id.* at 11-12.)  Finally, as for the § 1202(h)
16  merger exception, Plaintiff contends that, based on its plain text, § 1202(h)(4) applies to
17  situations where non-qualified stock is exchanged for qualified stock.  (*Id.* at 12-16.)

18  In reply, Defendant argues that Plaintiff's membership interest in LLC must be
19  considered "stock" for purposes of federal tax law because LLC elected to be taxed as an
20  S-corporation.  (Doc. 25 at 3-6.)  As for the purported additional consideration supporting
21  the 2011 exchange (*i.e.*, restrictive covenants or services provided), Defendant argues (1)
22  this is a new, previously undisclosed theory that is not cognizable for Rule 12(c) purposes
23  because it does not appear in the complaint; and/or (2) the Court lacks jurisdiction to
24  consider this theory because Plaintiff did not raise it during the administrative process.  (*Id.*
25  at 6-8.)  Defendant also contends that, had "the government . . . been aware of the Plaintiff's
26  allegations of this additional consideration in connection with the Merger Transaction, it

27

28  based on material outside the pleadings (specifically, the exact period during which
Plaintiff held the membership interest in LLC).

1  would have conducted extensive pretrial discovery on the issue," in part because the "new

2  contentions . . . raise serious concerns as to whether the 2011 merger . . . was a proper

3  tax-free reorganization or a purchase transaction triggering a taxable event." (*Id.* at 8.)[5]

4  Finally, Defendant reiterates its position that the § 1202(h) merger exception does not apply

5  when non-qualified stock is exchanged for qualified stock. (*Id.* at 11.)

6      D.   **Analysis**

7          1.   <u>Qualified Small Business Stock</u>

8      Under 26 U.S.C. § 1202(c)(1), "qualified small business stock" means "any stock

9  in a C corporation" issued after August 10, 1993, if (1) the issuing corporation is a

10  "qualified small business" as of the issuance date; and (2) the taxpayer acquires the stock

11  at its original issue either (i) "in exchange for money or other property (not including

12  stock)" or (ii) as compensation for services to the issuing corporation. *Id.*

13      Defendant argues that because Plaintiff acquired the Corporation stock in exchange

14  for other "stock" (*i.e.*, Plaintiff's membership interest in LLC), the Corporation stock is not

15  qualified small business stock under § 1202(c)(1). This contention relies on two

16  premises—first, that Plaintiff received the Corporation stock solely in exchange for his

17  membership interest in LLC; second, that Plaintiff's membership interest in LLC was

18  "stock" for purposes of § 1202.

19          a.   **Consideration For Corporation Stock**

20      In the complaint, Plaintiff alleges that "as compensation for his interest" in LLC,

21  he received stock in Corporation. (Doc. 1 ¶ 17.) However, in response to Defendant's

22  motion, Plaintiff contends that he actually received his Corporation stock in exchange for

23  his interest in LLC *and* other consideration and/or as compensation for services. (*See, e.g.*,

24  Doc. 24 at 11 ["Plaintiff received Stock not solely in exchange for his LLC membership,

25  but instead the consideration granted by Plaintiff in exchange included valuable ongoing

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5]    Defendant also contends that the exhibits attached to Plaintiff's motion do not

28  substantiate Plaintiff's theory that the additional consideration was provided in connection with the merger. (*Id.* at 8-9.) Because this argument is based on material outside the pleadings, the Court does not address it further.

service for continuity of the business and restrictions, covenants and other [valuable] terms . . . ."]; *id.* at 12 [Plaintiff "received Stock primarily as 'compensation for services provided to' [Corporation]."].)

Plaintiff's approach is improper for purposes of evaluating Defendant's entitlement to relief under Rule 12(c). Under Rule 12(c), the factual allegations in Plaintiff's complaint must be accepted as true. *Hal Roach Studios*, 896 F.2d at 1550. However, the Court may not "go[] beyond the pleadings to resolve an issue." *Id.*

Here, looking solely at the pleadings, Plaintiff does not allege he received the Corporation stock in exchange for anything other than his membership interest in LLC. Plaintiff's only description of the consideration given is in paragraph 17 of the complaint: "As compensation for his interest in [LLC], [Plaintiff] received C corporation stock in [Corporation] on or about January 5, 2011." (Doc. 1 ¶ 17.) Even liberally construed, this allegation does not support a reasonable inference that Plaintiff acquired his Corporation stock as "compensation for services" or in exchange for continued service and restrictive covenants. The question presented by Defendant's Rule 12(c) motion is whether, "looking solely to the pleadings," the complaint states a plausible claim for relief. *Hal Roach Studios*, 896 F.2d at 1550. Plaintiff cannot avoid dismissal under Rule 12(c) by offering new facts in its response brief that do not appear in the pleadings. *Cf. Fleming v. Pickard*, 581 F.3d 922, 925 & n.4 (9th Cir. 2009) (because a motion for judgment on the pleadings only considers the sufficiency of the complaint, "[w]e thus do not consider the Plaintiffs' declarations that were filed in support of their competing motion for summary judgment"). Whether Plaintiff should be allowed to amend his complaint to allege these additional facts is a separate issue addressed in Part IV below.

b.    **Meaning Of "Stock"**

Under § 1202(c)(1)(B)(i), one way that stock in a C-corporation can qualify as "qualified small business stock" is if it was acquired by the taxpayer at its original issue "in exchange for money or other property (not including stock)." Because, as discussed in the preceding section, the complaint alleges that Plaintiff acquired his shares of

Corporation (*i.e.*, C-corporation stock) in exchange for his membership interests in LLC, the eligibility determination turns on whether Plaintiff's membership interests in LLC constituted "other property" or "stock."

The parties spill much ink debating whether, and to what extent, state or federal law governs this determination. The answer is straightforward: "The definition of words used in federal tax statutes is governed by federal law." *Cunha's Estate v. C.I.R.*, 279 F.2d 292, 296 (9th Cir. 1960). *See generally United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) ("State law define[s] the nature of the taxpayer's interest in the property, but the state-law consequences of that definition are of no concern to the operation of federal tax law."); *United States v. Bess*, 357 U.S. 51, 55 (1958) (the Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law."); *Seaview Trading, LLC v. C.I.R.*, 858 F.3d 1281, 1286 (9th Cir. 2017) ("[S]tate business classifications do not supersede federal classifications for the purpose of assessing federal taxes."); *Affiliated Gov't Emp. Distrib. Co. v. C.I.R.*, 322 F.2d 872, 876-77 (9th Cir. 1963) (applying federal law to determine whether memberships in a company were "stock" for purposes of a federal tax provision). Thus, whether a membership interest in an LLC that has elected to be taxed as an S-corporation is "stock" for purposes of § 1202(c)(1) is a question of federal law.

When addressing this question, the Court starts, as always, with the plain meaning of the statutory text. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). Section 1202 does not define "stock." However, the Internal Revenue Code has a definitions section that applies broadly across the Code "where not otherwise distinctly expressed or manifestly incompatible with the intent thereof." 26 U.S.C. § 7701(a). When used in Title 26, the term "stock" is defined as follows: "The term 'stock' includes shares in an association, joint-stock company, or insurance company." *Id.* § 7701(a)(7). Additionally, § 7701(a)(3) explains that the three types of entities listed in § 7701(a)(7) (*i.e.*, associations, joint-stock

companies, and insurance companies) are examples of a "corporation"[6] while § 7701(a)(2) explains that one of the defining features of a "partnership" is that the entity is "not, within the meaning of this title, . . . a corporation."  Thus, whether an ownership interest in an entity constitutes "stock" turns on the nature of the entity itself—if, for example, the entity is an "association," the interest is stock; if the entity is a "partnership," it is not.  *See, e.g.*, *K.H. Co., LLC Emp. Stock Ownership Plan v. C.I.R.*, 2014 WL 700373, *13 (T.C. 2014) ("[T]he term 'stock' generally excludes partnership interests.").

Discerning the nature of the entity at issue in this case, an LLC, is complicated by the fact that the Internal Revenue Code "is silent on how LLCs should be taxed." *Kandi v. United States*, 295 F. App'x 873, 874 (9th Cir. 2008).  The Code "defines . . . partnership and corporation, but it does not state whether an LLC fits under any of these definitions." *Id.  See also DAF Charters, LLC v. C.I.R.*, 152 T.C. 250, 259 (2019) (citing *McNamee v. Dep't of the Treasury*, 488 F.3d 100 (2d Cir. 2007), for the proposition that "limited liability companies are not listed in section 7701").

Recognizing the "gaps left in the statute regarding the taxation of LLCs and other new forms of business entities," the IRS promulgated the so-called "check-the-box" regulations, which are codified at 26 C.F.R. §§ 301.7701-1 through 301.7701-3.[7]  Under § 301.7701-3(a), an LLC "can elect its classification for federal tax purposes." *Id.*  "An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under § 301.7701–2(b)(2)) or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner." *Id.*  Here, Plaintiff acknowledges that LLC elected to be taxed as an S-corporation (*i.e.*, as an association).  (Doc. 1 ¶ 9.)

---

[6]  There is no merit to Plaintiff's contention that "Defendant's reliance on IRC 7701 fails" because "it includes no definition of 'association.'"  (Doc. 28 at 5.)  As noted above, § 7701(a)(3) explains that an association is one type of corporation.

[7]  The check-the-box regulations were issued in 1996 to clarify the rules for determining the classification of certain business entities, including LLCs, for federal tax purposes.  *Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007).  The regulations "elaborate on the definitions of section 7701(a) to provide clear guidelines for classifying various forms of business entities." *DAF Charters*, 152 T.C. at 259.

1    Given this election, it is unnecessary to decide whether a membership interest in an

2    LLC should, *in general*, be considered "stock" for purposes of Title 26.  Instead, the

3    question is whether a membership interest in an LLC *that has elected to be taxed as an S-*

4    *corporation* should be considered "stock" for purposes of Title 26.  And the Court agrees

5    with Defendant that, when an LLC elects to be taxed as an S-corporation, it follows that a

6    membership interest in that LLC qualifies as "stock" for purposes of Title 26 (including

7    for purposes of § 1202's partial gain exclusion).

8        This conclusion is compelled by 26 C.F.R. § 301.7701-3, which provides that when

9    an LLC elects "association" treatment, "the following is deemed to occur: The partnership

10   contributes all of its assets and liabilities to the association in exchange for stock in the

11   association, and immediately thereafter, the partnership liquidates by distributing the stock

12   of the association to its partners."  26 C.F.R. § 301.7701-3(g)(1)(i).[8]  Thus, by electing

13   "association" classification for federal tax purposes, LLC was treated as issuing "stock,"

14   *i.e.*, LLC's membership interests became "shares of an association" and thus stock under

15   26 U.S.C. § 7701(a)(7).

16       Plaintiff contends that LLC's election "to be *taxed* as an S-corp." is irrelevant for

17   present purposes because he never "own[ed] stock in an S-corp.," because LLCs are

18   precluded under Arizona law (as well as the laws of other states) from issuing stock, and

19   because "transmut[ing] LLC into a corporation with stock for all purposes" would

20   "ignor[e] the reality of the formation, existence and operation of a limited liability

21   company."  (Doc. 24 at 7-8.)  These arguments lack merit because they focus too narrowly

22   on the abstract features of an LLC under state law.  As discussed above, the question here

23   is how to construe the term "stock" as it appears in § 1202(c).  That inquiry is governed by

24   federal law.  Although Plaintiff argues the check-the-box regulations should be disregarded

---

25   [8]    Section 301.7701-3(g)(1)(i) describes the deemed treatment of an elective change
26   from partnership to association.  Because an LLC with more than one member is treated as
     a partnership by default until it elects otherwise, this section applies when such companies
27   elect association classification.  *Id.* (describing the consequences when "an eligible entity
     classified as a partnership elects . . . to be classified as an association").  *See also id.*
28   § 301.7701-3(b)(i) (providing that the default classification for an LLC with more than one
     member is partnership).

for purposes of this inquiry because they "exceed[] the IRS's regulatory authority" and violate other principles of law (Doc. 28 at 5), the Ninth Circuit (and other circuits) have held otherwise and confirmed that the check-the-box regulations constitute a relevant, valid source of authority for purposes of interpreting the meaning of Title 26. *Kandi*, 295 F. App'x at 874 (holding that the check-the-box regulations are entitled to *Chevron* deference for purposes of interpreting the Internal Revenue Code and constitute "a reasonable attempt by the Treasury Department to fill in gaps left in the statute regarding the taxation of LLCs and other new forms of business entities"); *McNamee*, 488 F.3d at 109 ("In light of the emergence of limited liability companies and their hybrid nature, and the continuing silence of the Code on the proper tax treatment of such companies in the decade since the present regulations became effective, we cannot conclude that the above Treasury Regulations, providing a flexible response to a novel business form, are arbitrary, capricious, or unreasonable.  The current regulations allow the single-owner limited liability company to choose whether to be treated as an 'association'—*i.e.*, a corporation—or to be disregarded as a separate entity . . . .  The IRS check-the-box regulations . . . are . . . eminently reasonable.").

Under the check-the-box regulations, an LLC's election to be treated as an association applies "for federal tax purposes."  26 C.F.R. § 301.7701-3(a).  Plaintiff provides no authority suggesting that the unqualified term "federal tax purposes" somehow excludes the purpose of evaluating the partial gain exclusion under 26 U.S.C. § 1202 and the Court concludes that such a construction would be illogical and unreasonable.[9]  Indeed, courts have interpreted "federal tax purposes" as including not only federal *income* tax provisions, but federal tax provisions in general, and have thus applied other tax code provisions to LLCs based on their election status.  *See, e.g.*, *Kandi v. United States*, 2006 WL 83463, *5 (W.D. Wash. 2006), *aff'd*, 295 F. App'x 873 (9th Cir. 2008) ("[T]he IRS

---

[9]      Plaintiff also argues that "[h]ad Congress wished to exclude limited liability companies or partnerships from the benefits of § 1202, Congress would have . . . excluded 'any ownership units in a corporation, LLC, or partnership' in § 1202(c)(1)(B)(i), but it did not."  (Doc. 24 at 9-10.)  Given that Congress has yet to recognize LLCs in *any* provision of the tax code, this argument is unpersuasive.

check-the-box regulations . . . provide that if a single-member LLC does not make a check-the-box election, it is treated as a sole proprietorship for federal tax purposes.  Since 'federal tax purposes' includes federal employment taxes, the LLC is treated as a sole proprietorship for employment taxes and thus the owner is effectively the employer.").[10]

It is also worth noting that the IRS has issued multiple Private Letter Rulings ("PLR") concluding that LLCs which elect to be taxed as associations issue stock.  *See, e.g.*, I.R.S. P.L.R. 201538021 (Sept. 18, 2015) ("Company A [an LLC] is classified as an association for federal income tax purposes and, therefore, Unit Shares in Company A are treated as shares of stock."); I.R.S. P.L.R. 201636003 (Sept. 2, 2016) ("While ownership of a corporation is normally tied to stock ownership, and under state law LLC owners hold a member interest and not formal stock, the term 'stock' for federal tax purposes is not restricted to cases where formal stock certificates have been issued.").  Under 26 U.S.C. § 6110(k)(3), PLRs may not be used as precedent.  However, they do "reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws" and thus may provide "[p]ersuasive evidence" that such construction "is compelled by the language of the statute."  *Hanover Bank v. C.I.R.*, 369 U.S. 672, 686 (1962).  *See also Taproot Admin. Servs., Inc. v. C.I.R.*, 679 F.3d 1109, 1119 (9th Cir. 2012).

In sum, Plaintiff's membership interest in LLC constituted "stock" for federal tax purposes, including 26 U.S.C. § 1202(c)(1), pursuant to LLC's election to be taxed as an association.  Given this determination, it follows that Plaintiff's Corporation stock was not "qualified small business stock" under § 1202(c)(1) because—at least according to the current version of the complaint—it was obtained in a stock-for-stock exchange.  Although

---

[10]     *See also Garnett v. C.I.R.*, 132 T.C. 368, 376 (2009) (noting that the election to be treated as a corporation "is effective for Federal tax purposes, including application of the rules in [§] 469" of Title 26); *L & L Holding Co. v. United States*, 2008 WL 1908840, *5 (W.D. La. 2008) (finding that "for federal tax purposes" includes employment tax purposes because the "tax treatment of limited liability companies is covered *only* in the Check-the-Box regulations"); *McNamee,* 488 F.3d at 111 (applying the payroll tax sections of the tax code based on an LLC's election to be treated as a disregarded entity under the check-the-box regulations).

"a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." *C.I.R. v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (citations omitted).[11]

## 2.   Merger Exception

Plaintiff contends that, even if his membership interest in LLC was "stock" for purposes of the "analysis under § 1202(c)(1)(B)(i)," he "still is eligible for the Exclusion based on application of § 1202(h)(4)."  (Doc. 24 at 12.)

Section 1202(h)(4)(A) provides:

> In the case of . . . a reorganization described in section 368, if qualified small business stock is exchanged for other stock which would not qualify as qualified small business stock but for this subparagraph, such other stock shall be treated as qualified small business stock acquired on the date on which the exchanged stock was acquired.

Section 1202(h)(4)(B) limits the gain excludable to "the gain which would have been recognized at the time of the transfer described in subparagraph (A)" if 26 U.S.C. § 368 had not applied.

Defendant contends that, based on its plain language, § 1202(h)(f)(A) "does not apply in reverse to 'cleanse' nonqualified stock."  (Doc. 20 at 7-8.)  Plaintiff responds that "[a]dmittedly a matter of semantics, it cannot be said that the phrase 'if qualified small business stock is exchanged for other stock which would not qualify as qualified small business stock' means that the conjunctive term 'exchanged for' is limited to one direction."  (Doc. 24 at 14.)  Neither party cites, nor can this Court find, any case law examining the scope and construction of § 1202(h).

The Court concludes that Plaintiff's interpretation of § 1202(h)(4), although not frivolous, is unavailing.  Although the term "exchange for" might be ambiguous if viewed

---

[11]   The "default rule of statutory interpretation that exclusions from income must be narrowly construed" also supports this conclusion.  *C.I.R. v. Schleier*, 515 U.S. 323, 328 (1995).

in isolation, "statutory language cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).  Section 1202(h)(4)(A) provides that "if qualified small business stock is exchanged for *other stock which would not qualify as qualified small business stock* but for this subparagraph, *such other stock* shall be treated as qualified." *Id.* (emphases added).  Put another way, the stock received inherits qualities of the stock given, including its status as qualified small business stock partially excludable under § 1202(a).

The plain language of § 1202(h)(4)(A), alone, indicates that the "other stock" treated as qualified is non-qualified stock.  Under Plaintiff's reading, qualified stock would be treated "as qualified"; at best, this reading is redundant, and at worst, it is nonsensical.[12] "[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover."  *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925).

The limit in § 1202(h)(4)(B)—that gain is only excludable to the extent of the gain recognizable at the time of the transfer—further undermines Plaintiff's interpretation.  In an exchange of non-qualified stock for qualified stock, at the time of transfer, *no* gain would be excludable because the initial stock was not qualified.

Thus, Plaintiff's stock does not qualify for exclusion under the merger exception in § 1202(h).  Because the merger exception does not apply, the Court will not address the holding period issue.

…

---

[12]     Also, given the definition of qualified stock in § 1202(c)(1) (which does not include stock received in exchange for other stock), the Court is skeptical that an exchange of nonqualified stock for qualified stock is even possible under the terms of the statute. Simply by virtue of the exchange, the stock received is not qualified.  Thus, the exchange would necessarily be nonqualified stock for nonqualified stock, which does not fall under § 1202(h).

1     3.     Summary

2        The complaint fails to plead facts that, if true, support the conclusion that Plaintiff's

3 Corporation stock was "qualified small business stock" under 26 U.S.C. § 1202(c)(1) or

4 (h).  Thus, Defendant is entitled to judgment on the pleadings.

5 III.   Plaintiff's Motion For Summary Judgment

6        Because the Court has granted Defendant's motion for judgment on the pleadings,

7 Plaintiff's motion for summary judgment is moot.  *Stafford v. Jewelers Mut. Ins. Co.*, 554

8 F. App'x 360, 368 (6th Cir. 2014) (affirming where "[t]he district court addressed Jewelers

9 Mutual's motion for judgment on the pleadings, concluded that coverage was not

10 warranted, and . . . then dismissed Stafford's motion for summary judgment as moot").

11 IV.  Leave To Amend

12       Although the Court has resolved the question presented by Defendant's Rule 12(c)

13 motion (*i.e.*, whether the facts alleged in the complaint establish a plausible claim for a tax

14 refund based on § 1202's partial gain exclusion) in Defendant's favor, Plaintiff suggests in

15 his motion papers that his claim for a refund is actually based on a different set of facts—

16 specifically, that he did not receive his Corporation stock solely in exchange for his

17 membership interest in LLC, but also in exchange for his agreement to enter into certain

18 restrictive covenants and/or as compensation for services rendered.  Plaintiff has not,

19 however, requested leave to amend his complaint to allege those additional facts.

20       This creates a dilemma from the Court's perspective.  On the one hand, it seems at

21 least possible that the addition of these facts might be enough for Plaintiff to avoid

22 dismissal under Rule 12(b)(6) or Rule 12(c).  Although, as discussed in Part II above, the

23 plain language of § 1202(c)(1) makes clear that stock in a C-corporation does not constitute

24 as "qualified small business stock" when it is obtained solely in exchange for other "stock,"

25 the statutory language is less precise as to the consequences when stock in a C-corporation

26 is obtained in exchange for both stock and other forms of compensation.  To be clear, the

27 Court does not intend to suggest it has reached any conclusions on that question of statutory

28 interpretation (which is not briefed in any significant detail in the parties' motion papers

- 16 -

and is not, at any rate, properly before the Court due to the current procedural posture of the case). But it would be a harsh outcome to terminate this case now, despite the possibility that Plaintiff has a valid claim for relief, due to the absence of a formal amendment request.

On the other hand, it also appears that Defendant may have a variety of grounds for opposing any amendment request. For one thing, the Rule 16 scheduling order stated that "[n]o motions to join parties, amend pleadings or fil[e] supplemental pleadings shall be filed." (Doc. 14 at 1.) After a deadline established in a Rule 16 scheduling order expires, a party seeking to amend its pleading must satisfy Rule 16(b)(4)'s "good cause" standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). This "standard primarily considers the diligence of the party seeking the amendment. . . . [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . If that party was not diligent, the inquiry should end." *Id.* at 609. Again without prejudging the issue, it seems to the Court that Defendant may wish to be heard on whether Plaintiff acted diligently by articulating one theory of relief in the complaint, allowing the entire discovery process to play out under that version of the complaint, and then seeking leave to amend after the close of discovery. In a related vein, Defendant may wish to be heard on whether allowing amendment under these circumstances would result in undue prejudice, which may serve as a basis for denying an amendment request even if the moving party was diligent. *Johnson*, 975 F.2d at 608 (if a party seeking to amend its pleading after the date specified in the scheduling order shows "good cause" under Rule 16(b), the party must then demonstrate that amendment would be proper under Rule 15). Finally, Defendant also may wish to be heard on whether amendment would be futile, both based on the as-yet-unresolved statutory interpretation question identified in the previous paragraph and/or based the theory (which is addressed in cursory detail in the parties' motion papers) that Plaintiff is precluded by the "substantial variance" doctrine from relying on the additional facts discussed in his motion papers because he did not raise them during the administrative process.

Given this backdrop, the Court concludes the best outcome is to authorize Plaintiff to file a motion for leave to amend his complaint, which Defendant may oppose.  This approach will ensure that the issues are presented in a procedurally appropriate sequence and will enable the Court to resolve those issues with the benefit of full adversarial briefing.

Accordingly,

**IT IS ORDERED** that:

1.      Defendant's motion for judgment on the pleadings (Doc. 20) is **granted**.

2.      Plaintiff's motion for summary judgment (Doc. 24) is **denied as moot**.

3.      Plaintiff may, within 21 days of the issuance of this order, file a motion for leave to amend.  If Plaintiff files such a motion, he must, consistent with LRCiv 15.1(a), attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added.  If Plaintiff does not file a motion for leave to amend within 21 days of the issuance of this order, the Clerk shall enter judgment in Defendant's favor and terminate this action.

Dated this 12th day of October, 2022.

Dominic W. Lanza
United States District Judge